# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**JACK REESE JR.,**
**Claimant Below, Petitioner**

**FILED**

**November 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-0470** (BOR Appeal No. 2052331)
             (Claim No. 2016015826)

**THE HOMER LAUGHLIN CHINA COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jack Reese Jr., by Patrick K. Maroney, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The Homer Laughlin China Company, by Lucinda Fluharty, its attorney, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on May 27, 2016. The Office of Judges reversed the decision in its November 2, 2017, Order and held the claim compensable for lumbar sprain/strain. The Order was affirmed by the Board of Review on April 24, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Reese, an electrician, was injured in the course of his employment when he slipped and fell on November 28, 2015. Mr. Reese completed an injury report the following day in which he stated that he was going to get coffee, slipped in water, and fell onto his back. He stated that he hurt his back but was not going to seek treatment yet. He would go to the emergency room if it got worse. On November 30, 2015, Mr. Reese sought treatment at Trinity Health System. It was noted that he was seen for a fall at work in which he injured his back. It was also noted that he has a chronic back problem and had back surgery in the past. He was diagnosed with acute lumbar strain due to the fall, back contusion due to the fall, radicular lower back pain,

1

and exacerbation of degenerative joint disease of the lumbar spine. A lumbar x-ray showed advanced degenerative changes at L4-5.

On December 10, 2016, Mr. Reese reported to Trinity WorkCare that he had moderate pain with numbness in the legs. He reported a prior fall at work in which he injured his cervical spine. He had no loss of consciousness. He stated that he now has neck pain. He was diagnosed with cervical strain, lumbar strain, and history of lumbar disc disease. Mr. Reese returned on January 4, 2016, and stated that he had fallen a lot recently and had weakness in his upper extremities. He was sent to the emergency room for an emergency MRI. He was diagnosed with cervical and lumbar strain as well as myelopathy. The cervical MRI was performed the following day and showed advanced degenerative changes with findings suggesting myelomalacia within the cervical cord. Degenerative changes were noted in the thoracic and lumbar spine.

Mr. Reese has a history of cervical spine problems. A September 16, 2010, cervical x-ray showed degenerative changes with disc disease. On March 12, 2015, a cervical CT scan revealed multi-level degenerative changes with no findings of acute traumatic injury. Mr. Reese sought treatment for his cervical spine on September 20, 2015, with Judith Esman, M.D. Dr. Esman noted that he was seen for numbness in both arms and hands. A nerve conduction study was performed and showed normal median nerves. Dr. Esman noted that Mr. Reese may have cervical stenosis that is causing his symptoms.

Mr. Reese underwent cervical spine surgery sometime in January of 2016. On February 29, 2016, Mark Fye, M.D., noted that he was six weeks out from a posterior C3-6 laminectomy for spinal cord stenosis and myelopathy. He still had some pain in the upper extremities. It was noted that he also had surgery four to five years prior. Dr. Fye signed the employees' and physicians' report of injury on May 11, 2016, and diagnosed cervical spine stenosis with myelopathy as a result of the compensable injury. The claims administrator rejected the claim on May 27, 2016.

Mr. Reese testified in a deposition on November 3, 2016. He stated that he had a prior low back injury for which he had surgery and returned to work. He had cervical spine surgery in 2016 and had no problems with his neck prior to 2015. A month before the compensable injury, he fell at work in the parking lot and hurt his neck. He filed a claim and his neck recovered, with occasional stiffness, in about a week. Mr. Reese asserted that on November 28, 2015, he slipped in water at work and came down on his neck. He alleged that he lost consciousness from the injury. His neck was incredibly stiff when he stood up. He laid on the ground for approximately twenty minutes before getting up and taking some Ibuprofen. Mr. Reese said that he continued his shift and then reported the injury to a guard, Sally, later in the day. She was supposed to complete a report that included his neck and back. He sought treatment two days later where he alleges he reported an injury to his back as well as his neck. Mr. Reese testified that he continued to work until he was admitted to the hospital for neck and back pain on January 4, 2016. He stayed in the hospital for eleven days and underwent cervical spine surgery. Mr. Reese testified that he is not currently receiving treatment for his lumbar or cervical spine.

On May 1, 2017, Victoria Langa, M.D., performed an independent medical evaluation in which she noted that Mr. Reese was diagnosed with post posterior laminectomy C3-6 with symptoms and clinical findings consistent with residual cervical myelopathy. She explained that myelopathy results from narrowing of the spinal cord, usually caused by advanced degenerative disc or joint disease. Dr. Langa noted that the cervical myelopathy was confirmed by MRI on January 5, 2016. She found that Mr. Reese began experiencing symptoms of the condition as early as 2008. He also has a chronic back condition and severe spinal stenosis in the lumbar spine. Dr. Langa stated that it was impossible to know if his lower extremity symptoms were coming from the lumbar spine, the cervical spine, or both. The upper extremity symptoms were clearly related to the cervical myelopathy. The first upper extremity symptoms began in mid-2015. Dr. Langa opined that there was no evidence that Mr. Reese injured his neck as a result of the compensable injury. Though he asserted that he reported the neck injury to his employer and the emergency room physicians and nurses, there is no mention of a neck injury in the treatment notes or the first report of injury. Dr. Langa found that Mr. Reese did not submit paperwork regarding his neck until May of 2016, well after he had undergone surgery and retired. Dr. Langa stated that cervical myelopathy will remain stable for periods of time and intermittently deteriorate. Mr. Reese's myelopathy appears to have hit a deterioration period from December of 2015 through January of 2016.

The Office of Judges reversed the claims administrator's decision and held the claim compensable for a lumbar sprain/strain on November 2, 2017. It found that though Mr. Reese alleges an injury to his cervical spine as well as his lumbar spine, there is no mention of a neck injury in the emergency room treatment note of November 30, 2015. The Office of Judges reasoned that if he had reported a neck injury, an x-ray of the cervical spine would have been obtained when they x-rayed the lumbar spine. The initial injury report also failed to mention a neck injury and just listed the low back as the injured body part. The Office of Judges next determined that when Mr. Reese was treated at Trinity WorkCare on December 10, 2015, he reported that he fell backwards and hit the right side of his face. This contradicted his initial report of the injury. Also, the Office of Judges found that diagnostic testing shows that Mr. Reese had preexisting degenerative changes and disc disease of the cervical spine. The records also show that he had numbness in his arms and hands prior to the compensable injury. Next, the Office of Judges found that Dr. Langa opined in her independent medical evaluation that the cervical myelopathy was the result of a periodic deterioration, which is common with the disease, and that it was not the result of the compensable injury. Finally, the Office of Judges concluded that Dr. Fye did not explain how the cervical stenosis with myelopathy related to the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on April 24, 2018.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Reese clearly had cervical stenosis and myelopathy prior to the compensable injury occurring. Also, the treatment notes and first injury report show that he did not initially report an injury to his cervical spine. Even if Mr. Reese did sustain an aggravation of his preexisting injury as a result of the compensable fall, such aggravation is not compensable under *Gill v. City of Charleston* 236 W.Va. 737, 783 S.E.2d 857 (2016).

3

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** November 2, 2018

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.